AF Approval ~~~~~~                                   Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:13-cr-280-Orl-28DAB

MICHAEL GLENN GLASCOCK

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A.
Lee Bentley, III, United States Attorney for the Middle District of Florida, and the
defendant, MICHAEL GLENN GLASCOCK, and the attorney for the defendant,
Ismael Solis, Jr., mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Three
of the Indictment.  Count One charges the defendant with production of child
pornography, in violation of 18 U.S.C. § 2251(a).  Count Three charges the
defendant with attempted enticement of a minor, in violation of 18 U.S.C.
§ 2422(b).

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of
imprisonment of 15 years up to 30 years imprisonment, a fine of $250,000, a
term of supervised release of not more than 5 years up to life, and a special

Defendant's Initials _____

assessment of $100.   Count Three is punishable by a mandatory minimum term

of 10 years up to life imprisonment, a fine of $250,000, a term of supervised

release of not more than 5 years up to life, and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make

restitution to any victim of the offenses, and with respect to other offenses, the

Court may order the defendant to make restitution to any victim of the offenses,

or to the community, as set forth below.

 3. <u>Elements of the Offenses</u>

  The defendant acknowledges understanding the nature and

elements of the offenses with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| <u>First:</u> | An actual minor, that is, a real person who was less than 18 years old, was depicted; |
| <u>Second:</u> | the Defendant employed, used, persuaded, induced, enticed, or coerced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct; and |
| <u>Third:</u> | either (a) the Defendant knew or had reason to know that the visual depiction would be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; or (c) the visual depiction was mailed or actually transported in interstate or foreign commerce. |

The elements of Count Three are:

| | |
|---|---|
| <u>First:</u> | The Defendant knowingly attempted to persuade, induce, entice, or coerce a minor individual to engage in sexual activity, as charged; |

Defendant's Initials _U/2L_     2



Second:     the Defendant used an interstate facility as alleged in the indictment to do so;

Third:      when the Defendant did these acts, the minor individual named in the indictment was less than 18 years old; and

Fourth:     one or more of the individual(s) engaging in the sexual activity could have been charged with a criminal offense under the law of the State of Florida.

4.     Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two and Four through Eight, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.     Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. §§ 2248 and 2259, defendant agrees to make full restitution to the minor victim named in indictment.

7.     Mandatory Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. §§ 2248 and 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court.  Further, pursuant to 18 U.S.C. § 3364(d)(5),

Defendant's Initials                     3



the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

8.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of

Defendant's Initials _MB_                5

sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).



12.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed,

Defendant's Initials _MR_                    7

the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

Defendant's Initials _MR_                8



(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 2253 and 2428, whether in the possession or control of the United States, the defendant or defendant's nominees

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.





The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

Defendant's Initials _____                    10

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _MR_          11



The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

14.     Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Defendant's Initials _____          12



**B.**    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 2259 and to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

        On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

        The defendant understands that this agreement imposes no limitation as to fine.

Defendant's Initials _____    13



2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _____            14

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _____      15



6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United

Defendant's Initials _MZ_                 16



States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.    <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.    <u>Filing of Agreement</u>

      This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

      10.    <u>Voluntariness</u>

      The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and

Defendant's Initials           17

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as

Defendant's Initials _____          18

the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.



13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _28th_ day of July, 2014.

MICHAEL GLENN GLASCOCK
Defendant

Ismael Solis, Jr.
Attorney for Defendant

A. LEE BENTLEY, III
United States Attorney

Andrew C. Searle
Assistant United States Attorney

Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _MG_          20



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO. 6:13-cr-280-Orl-28DAB

MICHAEL GLENN GLASCOCK

### FACTUAL BASIS[1]

Beginning on or about October 11, 2012, and continuing through and

including on or about October 11, 2013, in Brevard County, Florida, in the Middle

District of Florida, and elsewhere, the defendant, MICHAEL GLENN GLASCOCK

("GLASCOCK"), produced child pornography images of his three year old

daughter ("the minor victim") which he knew would be transported and

transmitted using any means or facility of interstate and foreign commerce, which

were transported and transmitted using any means or facility of interstate and

foreign commerce, and which were produced using materials that had been

mailed, shipped, and transported in interstate and foreign commerce.  Further, on

October 11, 2013, in Brevard County, Florida, in the Middle District of Florida,

and elsewhere, GLASCOCK used the Internet and a cell phone, which are

facilities and means of interstate commerce, in an attempt to induce a fictitious

individual who had not attained the age of 18 years to engage in sexual activity

for which any person could be charged with a criminal offense under the laws of

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant
to the defendant's involvement in the crime to which the defendant is pleading guilty and other
illegal activities in which the defendant may have been involved.

Defendant's Initials                 21



the State of Florida, that is, Lewd or Lascivious Battery, a violation of Florida

State Stat. § 800.04.   These actions by GLASCOCK  came to light as a result of

a joint investigation conducted by the Brevard County Sheriff's Office (BCSO)

and the Cocoa Beach office of the Department of Homeland Security (DHS),

Homeland Security Investigations (HSI), which is set forth, in part and substance,

below.

### *An Undercover Agent responds to GLASCOCK's online advertisement*

On September 9, 2013, GLASCOCK posted an online advertisement on

Craigslist entitled "New nudist family seeks other nudist families to host us in

space coas-m4mw-38(space coast)."  A law enforcement agent who was acting

in an undercover capacity observed the advertisement and responded to it using

an undercover email account.  Thereafter, the undercover agent ("the UC agent

agent") and GLASCOCK communicated with each other using email, via the

Internet, and a cell phone, as set forth below.

In their email correspondence, the UC agent told GLASCOCK that he had

a 13 year old daughter.  GLASCOCK expressed an interest in meeting the UC

agent, and said "13 is such a fun age."  When the UC agent asked GLASCOCK

what he had in mind, GLASCOCK said it would be better to go into specifics in

person but agreed that the two should meet.  The UC agent and GLASCOCK

discussed meeting in the future at a park.

### *GLASCOCK's October 11, 2013 email and cell phone communication with the UC agent*

On October 11, 2013, GLASCOCK and the UC agent had further email

Defendant's Initials                     22

correspondence. In these emails, GLASCOCK tried to convince the UC agent to come over for their first meet and the UC agent told GLASCOCK that he did not want to bring his 13 year old daughter over because he had never met GLASCOCK before. GLASCOCK told the UC agent that he lived on Merritt Island and that his daughter was three years old. Eventually, GLASCOCK said to the UC agent "I hope you cum over. If u decide to let me know im gonna go play with my baby girl now." The UC agent told GLASCOCK that it was not safe to talk and asked for GLASCOCK to call him. GLASCOCK agreed and the UC agent provided his UC phone number to GLASCOCK.

On October 11, 2013, at approximately 1:06 p.m., the UC agent received a phone call from GLASCOCK and a recorded phone conversation took place between the two individuals. GLASCOCK confirmed that he was the person who had the previous correspondence with the UC agent. GLASCOCK said that he wanted to get the "meet and greet" done and could meet at the park but he didn't have a car at the moment. GLASCOCK told the UC agent that he was playing with his daughter. The UC agent mentioned making videos with his fictitious daughter and GLASCOCK confirmed that he took pictures of his daughter. GLASCOCK said his daughter likes ".. a little licking" and the UC agent heard GLASCOCK performing oral sex on the minor victim. GLASCOCK then stated "yeah just did some licking." GLASCOCK stated that he didn't mind if the UC agent did the same thing on his daughter. GLASCOCK also stated that "she knows how to grab daddy's cock and stroke it."

Defendant's Initials                          23



At some point in the recorded conversation, the UC agent heard the minor victim in the background and asked GLASCOCK if his daughter was with him. GLASCOCK confirmed the child's presence.  GLASCOCK said they could "take turns licking little pussy."  To confirm that the child was real, the UC agent asked to speak to the child and GLASCOCK put the minor victim on the phone.  The UC agent briefly spoke to the child saying "hi" and the child responding by saying "hi."  GLASCOCK got back on the phone with the UC agent and the UC agent attempted to determine GLASCOCK's exact location.  GLASCOCK asked the UC agent if he could meet at a public park later and suggested that they bring their children with them for the meet or that he would bring his child.  GLASCOCK said he would also be willing to meet the UC agent alone.  GLASCOCK asked if the UC agent's 13 year old child "played with" anyone else.  The UC agent described meeting some friends on a website and stated "we share" and GLASCOCK stated "that's way hot."

### *GLASCOCK discusses sexually abusing the minor victim and reveals his desire to engage in illegal sexual acts with the UC agent's fictitious minor daughter*

GLASCOCK also revealed in the recorded conversation that he and another individual had rubbed their penises against the minor victim's vagina and performed oral sex on the child.  GLASCOCK further stated he masturbated while watching the other male sexually abuse the minor victim.  The UC agent told GLASCOCK he would use a condom and GLASCOCK responded "sounds hot."  GLASCOCK then said he was dying to "hook-up" with someone the UC

agent's daughter's age and asked what the UC agent liked to watch people do with her.  GLASCOCK eventually said he would perform illegal sexual acts on the UC agent's 13 year old daughter in front of the UC agent, specifically stating that he would "doggy her" right in front of the agent.  GLASCOCK said he would like to meet later and get the ball rolling.  As the conversation continued, the UC agent asked GLASCOCK if he had ever been with any other girl besides his daughter and GLASCOCK stated "no … I'm dying to."  GLASCOCK told the UC agent that "you can't penetrate" in reference to the minor victim's age and further stated "I can rub my cock on her pussy and when I go to cum I shove my cock against it and shoot my cum inside her pussy."  GLASCOCK also stated "she's way too small still."

The UC agent eventually asked GLASCOCK to give the agent his address and GLASCOCK said he was tempted to and stated "I can't wait to let you lick her little pussy."  GLASCOCK then asked if he could meet the UC agent at the park and then go back to the UC agent's place.  The UC agent agreed and told GLASCOCK to text him.  The UC agent asked GLASCOCK if he was going to bring his daughter to the meet so that the minor victim and the UC agent's 13 year old daughter could meet and GLASCOCK agreed that he would. GLASCOCK agreed that he would get back in touch with the UC agent.

After the telephone call ended, GLASCOCK sent a text message to the UC agent asking for a "g rated pic of your daughter."  After receiving the text message, the UC agent emailed GLASCOCK a photograph of his fictitious



daughter.

Based on the foregoing, GLASCOCK hereby acknowledges that he used the Internet and a cell phone, in an effort to stimulate the occurrence of, or cause, the UC agent's fictitious 13 year old daughter to engage in sexual activity for which a person could be charged with Lewd or Lascivious Battery in the State of Florida, in violation of Florida State Stat. § 800.04.

### *Agents locate GLASCOCK and he admits to producing and distributing child pornography images of the minor victim*

After having the recorded conversation with GLASCOCK, the UC agent used law enforcement databases and websites to identify him and determine his address, which was 3063 Sea Gate Circle, Merritt Island, in Brevard County, Florida ("GLASCOCK's address").  Later on October 11, 2013, the UC agent, HSI Special Agents ("SAs"), and BCSO agents responded to the GLASCOCK's address where GLASCOCK and the minor victim where present.

During audio recorded interviews with numerous agents, GLASCOCK stated, among other things, the following: He was the person who posted the online advertisement on Craigslist and communicated with the UC agent earlier in day, via email, using a desktop computer inside his residence.  He also provided the cell phone number that he used to communicate with the UC agent in the above-referenced conversation.  His three year old daughter (the minor victim) was home inside his residence with his wife and his four year old son.

GLASCOCK eventually made the following admissions to agents regarding his sexual exploitation of the minor victim:

Defendant's Initials _____        26



- Approximately six to seven months ago, he began having a sexual interest in children.

- He took nude photographs of the minor victim using a Nikon camera that was located in his dresser drawer and transferred the photographs to one of the SD cards inside his home.

- He sent the photographs of the minor victim to an individual who lived in Orlando, Florida using email. He communicated with this individual using KiK messenger service. This other individual was eventually identified to be William Edward Osman ("Osman").[2] He also spoke to Osman on the phone.

- He claimed that he took the photographs of the minor victim approximately one year earlier and sent them to Osman approximately two to three months earlier.

- Osman sent him child pornography images of Osman's one year old child, which GLASCOCK described as depicting the child's vagina with Osman's hand in the photograph. GLASCOCK believed the child pornography he received from Osman was stored on one of the SD cards inside his home.

- He claimed that he began sexually abusing the minor victim approximately three months earlier and that he had done so on four to five prior occasions.

- His saliva would be present on the minor victim's vagina. He masturbated and took some of his semen and rubbed it on the minor victim's vagina. He licked his finger and put it in the minor victim's vagina and admitted that he slightly penetrated the minor victim's vagina with his finger. He believed that it was possible for his semen to be present in the minor victim's diaper. He had sexually abused the minor victim earlier in the day at approximately 3:00 p.m.

---

[2] On October 15, 2013, HSI SAs interviewed Osman at his residence in Orlando. Osman admitted to the SAs that he communicated with GLASCOCK via the internet (Craigslist and KiK messenger) and that the two traded child pornography images of their respective children (GLASCOCK's three year old child who is the minor victim and Osman's one year old child). Osman further admitted to sexually abusing his one year old child and producing the images of child pornography involving his child. Thereafter, Osman was arrested and charged with several federal offenses under Middle District of Florida Case No. 6:13-cr-280-Orl-28DAB. On February 28, 2014, Osman entered a guilty plea to production of child pornography, in violation of 18 U.S.C. § 2251(a), and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B).



- He specifically described a nude photograph of the minor victim he took using the Nikon camera that depicted the child standing up with her legs spread, which was taken three months earlier.

- He acquired other child pornography images from websites.

After the interviews at his residence concluded, GLASCOCK was transported to the BCSO Major Crimes building. Agents told GLASCOCK that law enforcement would continue to ask him questions about his phone and the individual he sent the images to because the agents were in the process of trying to identify this other individual. GLASCOCK was asked to cooperate as much as he was willing to and GLASCOCK agreed that he would.

### *GLASCOCK's semen is found in the minor victim's diaper and on swabs taken from the minor victim during a medical exam*

While GLASCOCK was being interviewed, other agents entered GLASCOCK's residence and met his wife, the minor victim, and his four year old son. GLASCOCK's wife told the agents that she had recently changed the minor victim's diaper and placed the used diaper in the garbage in the kitchen inside the residence. Later, during the execution of a search warrant at GLASCOCK's residence, a crime scene technician ("CST") collected a pull-up diaper from the top of a garbage bin in the kitchen. The CST also eventually collected a DNA sample from GLASCOCK at a BCSO building by swabbing his mouth.

Agents also accompanied the minor victim, GLASCOCK's wife, and his other child to the Child Protection Team ("CPT") of Brevard County where a nurse performed a forensic medical exam/sexual assault kit on the minor victim.

Defendant's Initials _CMM_                  28



The minor victim's diaper, the swabs taken from the minor victim during the medical exam/sexual assault kit, and GLASCOCK's known DNA sample were all submitted to a Florida Department of Law Enforcement ("FDLE") laboratory for analysis.  An FDLE laboratory analyst determined that GLASCOCK's DNA was present in semen found in the minor victim's diaper as well as on an anal swab taken from the minor victim as part of her medical exam/sexual assault kit.

### *A forensic examination reveals child pornography images of the minor victim on GLASCOCK's SD card and on one of his cell phones*

During GLASCOCK's interviews with the agents, he discussed the electronic devices he possessed inside his residence, including two cell phones, SD cards, a Nikon digital camera, and a desktop computer.  Pursuant to the above-mentioned search warrant, agents seized the following electronic devices from GLASCOCK's residence:

- From the kitchen counter, a Samsung Sprint cell phone, model SPH-L720 Galaxy S4, purple with a black outer case.  The markings on this cell phone indicated that it was made in China.  Inside this phone was a Sandisk MicroSD 2G SD card that was also labeled as made in China.

- From the bedroom of GLASCOCK's son, a Samsung cell phone, model SPH-M930, black or grey in color.  The markings on this cell phone indicated that it was made in China.  The screen for this cell phone was cracked.  Inside this phone was a Sandisk MicroSD 2GB SD Card that was also labeled as made in China.

- From the dresser drawer in GLASCOCK's bedroom, a purple Nikon, Coolpix S4100, digital camera.  The camera appeared to be manufactured in China.  Inside the camera was a Transcend SD 2GB SD Card that was labeled as made in Taiwan.

A forensic examination of the electronic devices found in GLACOCK'S



possession revealed the following:

- 121 images of child pornography were located on the SD card found inside the above-listed Samsung Sprint cell phone, model SPH-L720 Galaxy S4. 24 of these images depicted the minor victim. The photographs depicting the minor victim contained EXIF data confirming that the photographs were taken on September 9, 2013 using the above-listed Samsung Sprint cell phone, model SPH-L720 Galaxy S4. Some of the images of the minor victim depicted a lewd display of the minor victim's vagina and GLASCOCK's penis in contact with the minor victim's vagina. Another one of these images depicted GLASCOCK performing oral sex on the minor victim's vagina. 65 of these 121 images involved prepubescent children, including images of the children being vaginally penetrated. Also included among these images were the child pornography images involving Osman's one year old daughter.

- 300 images of child pornography were also located on the above-listed Samsung Sprint cell phone, model SPH-L720 Galaxy S4, itself.

In addition, the forensic examination of GLASCOCK's Samsung Sprint cell phone, model SPH-L720 Galaxy S4, revealed KiK messenger chats between GLASCOCK and Osman. In these chats, which started on September 18, 2013, at approximately 11:31 a.m., GLASCOCK sent Osman images of child pornography depicting the minor victim (the same images that were located on the SD card found inside the above-listed Samsung Sprint cell phone, model SPH-L720 Galaxy S4). In response, Osman sent several images of child pornography to GLASCOCK in exchange for more images. In these chats, both GLASCOCK and Osman described sexually abusing their respective minor daughters. GLASCOCK also discussed in the chats that he was glad that the minor victim's speech was delayed because it prevented her from disclosing the



sexual abuse.[3]  In other communications located on his electronic devices, GLASCOCK solicited other adults in an effort to get them to have sexual contact with the minor victim.

### *GLASCOCK's email accounts reveal further distribution of the child pornography images involving the minor victim*

During his interviews, GLASCOCK identified several of his email accounts to agents.  GLASCOCK eventually provided the agents with permission to assume his online identity, and to use his email accounts to further investigations into individuals GLASCOCK was communicating with.

Agents ultimately obtained search warrants for GLASCOCK's email accounts and received records containing the content of these email accounts from service providers, including Google, Inc.  A review of GLASCOCK's emails revealed that he had several conversations with other individuals regarding the sexual abuse of the minor victim.  For instance, in some of these emails, GLASCOCK discussed sexually abusing the minor victim on a live feed through the Tango application.  In addition, GLASCOCK's email content revealed his conversations with an individual eventually identified to be Jonathan Prive ("Prive").[4]  In emails, GLASCOCK and Prive discussed in detail an incident where the minor victim was sexually abused by Prive while GLASCOCK

---

[3] When the minor victim was taken to the CPT on October 11, 2013, a forensic interview could not be conducted because the minor victim had delayed speech.

[4] On November 5, 2013, BCSO and HSI agents arrested Prive after conducting a UC investigation in which the UC agent posed as GLASCOCK.  Prive confessed to placing his penis in the minor victim's mouth and on her vagina and to ejaculating on the minor victim's stomach while GLASCOCK observed the abuse.  Prive is currently charged with federal offenses under Middle District of Florida Case No. 6:14-cr-33-Orl-28KRS.



observed, as described in footnote 4.

In other emails from September 7, 2013 and September 9, 2013, GLASCOCK distributed approximately nine images of child pornography depicting the minor victim to Osman and Osman sent GLASCOCK child pornography images of Osman's one year old daughter.

### GLASCOCK admits to interstate and foreign commerce nexus

During follow-up interviews at the BCSO Major Crimes Building, GLASCOCK admitted to agents that he used the above-listed Nikon camera and his old cell phone, with the cracked screen, to take "nude" photographs of the minor victim and that these photographs were stored on an SD card. After agents located the 24 child pornography images of the minor victim on the SD card found inside one of GLASCOCK's cell phones, these images were shown to GLASCOCK. GLASCOCK eventually admitted that he was depicted in the photographs with the minor victim. GLASCOCK further stated that a white substance on the minor victim in one of the photographs was likely his semen. GLASCOCK claimed that this was the only "photo session" he had with the minor victim, and that he sent child pornography images of the minor victim to Osman one month earlier. He further admitted that he sexually abused the minor victim in similar fashion on four occasions within the last three to four months.

Based on the foregoing, GLASCOCK hereby acknowledges that he used materials that were transported in interstate or foreign commerce, including the above-listed Nikon camera and his cell phones, to produce the child pornography

Defendant's Initials           32

images of the minor victim.  GLASCOCK further acknowledges that the images of child pornography that he produced were actually transported in interstate or foreign commerce when GLASCOCK sent them, via email, to other individuals.

Agents also specifically asked GLASCOCK about the email exchange between him and Prive.  Based on this email exchange, it was apparent to agents that GLASCOCK allowed Prive to sexually abuse the minor victim at GLASCOCK's residence while GLASCOCK observed the abuse.  When asked about these particular emails, GLASCOCK denied letting a male sexually abuse the minor victim and claimed that on the date in question his daughter was not with him.

### Identified victims from GLASCOCK's child pornography collection

The child pornography images in GLASCOCK's possession were sent to the National Center for Missing and Exploited Children (NCMEC) which issued a Child Identification Report confirming that there were known and identified victims depicted in the images.

Defendant's Initials _____          33